UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

STEPHEN SAMUEL PAVIA,

                            Plaintiff,        **No. 6:14-cv-06379(MAT)**
                                              **DECISION AND ORDER**

            -vs-

CAROLYN W. COLVN, Acting
Commissioner of Social Security,

                            Defendant.

_____

## I.   Introduction

       Represented by counsel, Stephen Samuel Pavia("Plaintiff")
brings this action pursuant to Titles II and XVI of the Social
Security Act, seeking review of the final decision of the
Commissioner of Social Security ("the Commissioner") denying his
application for Disability Insurance Benefits ("DIB") and
Supplemental Security Income ("SSI"). The Court has jurisdiction
over this matter pursuant to 42 U.S.C. § 405(g). For the reasons
discussed below, the Commissioner's decision is affirmed.

## II.  Procedural Status

       Plaintiff protectively filed applications for DIB and SSI on
July 12, 2011, alleging disability since April 1, 2007, based on
high blood pressure, emphysema, chronic obstructive pulmonary
disease, asthma, obesity, diabetes, hypoglycemia, and difficulty
breathing. T.92-93, 167-74, 181, 187.[1] After the applications

---

[1]

       Numbers preceded by "T." refer to pages from the administrative transcript,
submitted by Defendant as a separately bound exhibit.

initially were denied, Plaintiff requested a hearing, which was held on November 29, 2012, before administrative law judge Brian Kane ("the ALJ"). T.26-79. At the hearing, Plaintiff's attorney amended the onset date to January 16, 2010. T.11, 52-53, 163. Plaintiff testified, as did impartial vocational expert Timothy Janikowski, Ph.D. ("the VE"). On February 13, 2013, the ALJ issued a decision finding Plaintiff not disabled. T.8-21. The Appeals Council denied Plaintiff's request for review on May 14, 2014, making the ALJ's decision the final decision of the Commissioner. T.1-5. Plaintiff timely commenced this action.

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rule of Civil Procedure. The Court adopts and incorporates by reference herein the undisputed and comprehensive factual recitations contained in the parties' briefs. The record evidence will be discussed in further detail as necessary to the resolution of the parties' contentions.

### III. Scope of Review

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Social Security Act ("the Act"), the district court is limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the Commissioner employed the proper legal

standards. <u>Green-Younger v. Barnhart</u>, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. <u>See</u> 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. <u>Tejada v. Apfel</u>, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." <u>Byam v. Barnhart</u>, 336 F.3d 172, 179 (2d Cir. 2003) (citing <u>Townley v. Heckler</u>, 748 F.2d 109, 112 (2d Cir. 1984)).

## IV. The ALJ's Decision

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. Initially, the ALJ found that Plaintiff meets the insured status requirements of the Act through December 31, 2010. T.13. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 16, 2010, the amended onset date.

At step two, the ALJ determined that Plaintiff has the following "severe combination of impairments: diabetes mellitus type II and chronic obstructive pulmonary disease." T.13. The ALJ

found that Plaintiff's other alleged impairments, including obesity
and a history of drug addiction, are "medically determined" but do
not cause more than minimal limitations in his ability to perform
basic work activities. T.14. With regard to Plaintiff's obesity,
the ALJ noted that when consultative physician Dr. Sandra Boehlert
examined him in October 2011, he was 5'5"-tall and weighed 255
pounds; despite Dr. Boehlert's diagnosis of morbid obesity, she
found no physical limitations. Subsequently, at a November 2012
appointment with his primary care physician, Dr. Hristo N.
Colakovski, Plaintiff's weight was down to 199 pounds. T.14.

With regard to Plaintiff's drug addiction, the ALJ noted that
a November 2009 treatment record from Strong Memorial Hospital
indicates that Plaintiff has been abstinent from heroin and
receiving methadone treatment for about two years. His methadone
dosages had been reduced from 45 mg to 6 mg as of August 2012. The
ALJ stated that there was "insufficient evidence" to corroborate
Plaintiff's testimony that his methadone usage had added to his
health problems. T.14.

At step three, the ALJ found that Plaintiff does not have an
impairment or combination of impairments that meets or medically
equals the severity of a listed impairment. The ALJ specifically
considered Listing 3.00 (Respiratory System) and Listing 9.00
(Endocrine Disorders). T.14. Based on Plaintiff's impairments and
resulting limitations, the ALJ found that he has the residual

-4-

functional capacity ("RFC") to perform less than the full range of "light" work. T.15. Specifically, Plaintiff can walk, stand, and sit for up to 4 hours each in an 8-hour day; lift, carry, and push up to 20 pounds at a time; but must avoid concentrated exposure to pulmonary irritants. T.15; see also T.15-19.

At step four, the ALJ determined that Plaintiff has past work, but not past relevant work, as a waiter, a short order cook, a cook helper, and a telephone solicitor. T.19-20. The VE testified that a person with Plaintiff's RFC could perform his past work as a waiter and a telephone solicitor.

At step five, the ALJ found that Plaintiff is a younger individual with at least a high school education. T.20. Plaintiff does not have the RFC to perform the full range of "light" work, making reliance on the Medical-Vocational Rule 202.21 inappropriate. The ALJ relied on the VE's testimony that a person with Plaintiff's vocational profile and RFC could perform the requirements of such representative occupations as bench assembler (DOT #706684042, SVP 2, light), of which there are 900 positions in the Finger Lakes region and 345,000 nationally. T.20. Accordingly, the ALJ entered a finding of "not disabled." T.21.

## IV.  Discussion

### A.  Failure to Properly Evaluate Plaintiff's Neuropathy (Plaintiff's First Claim)

Plaintiff claims that the ALJ erred at step two by ignoring his bilateral ulnar neuropathy, which Plaintiff argues is a

"severe" impairment because it causes "more than a minimal effect on [his]ability to work[,]" Dkt #8-1 at 11. Plaintiff alleges that this is shown by "ample objective medical evidence in the record" such as a positive Tinel's sign at the right elbow, T.571, and mild atrophy of the interossei and abductor digiti quinti on the right, Id. The Commissioner argues that, based on Plaintiff's own account of his daily activities, including playing the guitar, painting, and drawing, his alleged bilateral ulnar neuropathy is not a "severe" impairment. The Commissioner argues that, alternatively, any error in failing to find the neuropathy to be severe at step two was harmless.

As the Commissioner notes, the ALJ did recognize that Plaintiff complained of some numbness in his hands and fingers to Dr. Colakovski and neurologist Shirley J. Cirello, who diagnosed him with "diabetic neuropathy."  For instance, Plaintiff reported to Dr. Cirillo on July 18, 2012, that he had tingling in the third and fourth fingers of both his hands. T.569-73. On physical examination, Dr. Cirillo found that Plaintiff was neurologically intact, had full muscle strength, reflexes, range of motion, and normal gait. T.571-72. Indeed, his examination was largely unremarkable. T.570-72. Plaintiff reported having smoked cigarettes for 30-to-40 years and presently was smoking 2 packs of cigarettes per day. T.570. Dr. Cirillo diagnosed him with poorly controlled diabetes, and opined that he was at a high risk for diabetic

neuropathy and ulnar neuropathy due to his noncompliance with treatment recommendations, i.e., his failure to take the prescribed dosage of Metformin and his refusal to cease smoking. T.572. Dr. Cirillo explained to Plaintiff that his condition would not improve unless he improved his diabetes control. T.572. The diagnosis of bilateral ulnar neuropathy localized to the elbows was confirmed by Dr. I-Hweii A. Chen on November 6, 2012, based on a motor nerve conduction study. T.661. At that time, Plaintiff complained of mild intermittent numbness in his hands and diminished pinprick at the dorsal ulnar cutaneous nerve territory. T.661.

However, substantial evidence supports a finding that Plaintiff's bilateral ulnar neuropathy is not "severe" insofar as it does not significantly limit his ability to perform work-related activities. At his appointment with Dr. Ciriloo, Plaintiff denied dropping items and explained that he could still play the guitar and open jars, although he had lost some dexterity. T.569. Similarly, he told Dr. Chen that the symptoms "fluctuate" and currently were "mild," and Dr. Chen found that Plaintiff had normal sensation in his hands and full strength in both hands. T.661. Plaintiff reported engaging in activities, on a daily basis, that require fine motor control of his hands  (e.g., drawing, painting, and playing the guitar). T.19 (citing T.206-07). Plaintiff noted that, as a result of his illness, he had been able to spend more

time doing these leisure activities than when he was working. Id.
The Court recognizes that a claimant's burden at step two is,
according to the Second Circuit, "de minimis." Here, however,
Plaintiff's own statements regarding his daily  activities and
symptoms preclude a finding that he has met this burden.

### B.    RFC Unsupported by Substantial Evidence (Plaintiff's Second Claim)

Plaintiff contends that the ALJ's RFC assessment was not
supported by substantial evidence because the ALJ improperly
rejected portions of the opinion issued by Plaintiff's primary care
physician, Dr. Colakovski, and because the opinion evidence on
which the ALJ relied does not support the RFC determination. See
Dkt #8-1 at 17-20, 14-16.

The Commissioner generally "recognizes a 'treating physician'
rule of deference to the views of the physician who has engaged in
the primary treatment of the claimant[.]" Green-Younger, 335 F.3d
at 106.   However, "[w]hile the opinions of a treating physician
deserve special respect, they need not be given controlling weight
where they are contradicted by other substantial evidence in the
record[.]" Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002)
(internal and other citations omitted). Rather, it is up to the
Commissioner to resolve "[g]enuine conflicts in the medical
evidence[.]" Id. (citation omitted). In Veino, the Second Circuit
held that it was within the province of the ALJ to credit portions
of a treating physician's report while declining to accept other

-8-

portions of the same report, where the record contained conflicting opinions on the same medical condition. Veino, 312 F.3d at 588.

Here, the ALJ gave "significant weight to Dr. Colakovski's assessments of [Plaintiff]'s ability to sit, stand, walk, lift, push, and pull in an eight-hour workday because of his treating relationship with the claimant and the consistency of this opinion with the overall treating record." T.18. However, Plaintiff argues, the ALJ improperly failed to incorporate into the RFC Dr. Colakovski's opinion that Plaintiff could engage in "pushing, pulling, bending" for 1 to 2 hours in an 8-hour workday and had the "ability to lift/carry" for 1 to 2 hours in an 8-hour workday. T.456, 464. According to Plaintiff, the ALJ's RFC determination is incompatible with Dr. Colakovski's opinion. However, the Court cannot discern any material inconsistencies. The form completed by Dr. Colakovski did not mention the amount of weight to be pushed, pulled, lifted, or carried, but instead asked that the ability to perform these activities be expressed in terms of duration. Thus, the ALJ's determination regarding the amount of weight that Plaintiff could lift and carry was not inconsistent with, or contrary to, Dr. Colakovski's opinion about the duration of time Plaintiff could perform these activities. Plaintiff also argues that the ALJ failed to quantify the frequency with which Plaintiff could push, pull, and bend. However, this is of no moment. The SSA rulings indicate that an ability to bend at least occasionally is

required for both light and sedentary work. <u>See</u> SSR 83-14, 1983 WL 31254, at *4 (S.S.A. 1983) ("[T]he frequent lifting or carrying of objects weighing up to 10 pounds (which is required for the full range of light[2] work) implies that the worker is able to do occasional bending of the stooping type; i.e., for no more than one-third of the workday to bend the body downward and forward by bending the spine at the waist."). However, there is no indication by any of the doctors who examined Plaintiff that he had any restrictions in his ability to bend his spine at the waist, such as restricted forward flexion in her back. Indeed, consultative physician Dr. Harbinder Toor opined that Plaintiff could lift or carry up to 50 pounds occasionally, and up to 25 pounds frequently, and had no limitations in his ability to walk, stand, sit, push, pull, bend, or use his hands. T.457-60. Consultative physician Dr. Boehlert examined Plaintiff and found that had no functional limitations at all. <u>See</u> T.445. The ALJ here gave Plaintiff the benefit of the doubt in limiting him to a category narrower than the full range of light work.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. . . ." 20 C.F.R. §§ 404.1567(b), 416.967(b).

Plaintiff further argues that the ALJ improperly gave "little weight" to Dr. Colakovski's opinion that Plaintiff is able to participate in activities for only 15 hours per week. T.18. Dr. Colakovsi also indicated that Plaintiff was "unable to participate in activities except treatment or rehabilitiation" for "3 to 6 months". T.419, 462. The ALJ determined that Dr. Colakovski's conclusion was "inconsistent with his examination findings, his functional limitations assessment and the overall treating record." T.18. The reasons given by the ALJ for discounting this portion of Dr. Colakovski's opinion are supported by the record. As the Commissioner points out, Dr. Colakovi's functional assessment reports reflect unremarkable clinical findings, e.g., he noted that Plaintiff's general appearance, gait, heel and toe walking, and squatting ability are all normal, as are his skin, lymph nodes, head and face, neck, heart, abdomen, musculoskeletal, neurological, extremities, and hands. T.455-56. The only abnormalities noted are under "eyes" (wears corrective lenses), ear/nose/throat ("cerumen impaction", i.e., earwax buildup, in right ear), and respiratory ("[decreased] air entry"). T.455-56. Dr. Colakovski's clinical findings during previous examinations had been largely unremarkable. E.g., T.561. Perhaps most significantly, Plaintiff's own reports of his activities of daily living contradict Dr. Colakovski's highly restrictive RFC assessment. As the ALJ observed, Plaintiff stated that he cooked

twice daily, vacuumed, washed dishes, did laundry, walked to the store, walked his dog several times a day, drove a car, went shopping for groceries alone, and socialized with others three to four times per week. See T.202-07. His hobbies included drawing, painting, and playing guitar, and he stated that he had been able to do these activities more than before his illness. T.207. In fact, he testified that he sometimes performed at "open mic" nights. T.67-68. He did not have any side effects from his medications. T.76. He reported being able to follow spoken and written instructions, and had no difficulty remembering things. T.209-10. The ALJ noted that Plaintiff told consultative physician Dr. Boehlert that he lived on the third floor and used the stairs regularly; he informed neurologist Dr. Cirillo that he exercised 4 times a week, including lifting weights and walking. T.19 (citing Ex. 8F at 1, 18F at 2). The ALJ also pointed out that Plaintiff admitted to his therapist at the methadone-maintenance clinic that he was "lazy" and "somewhat comfortable with his life", that he was "not willing to work as self reported", was "not interested in the job club program at DSS" because he was "trying to drag out the process from having to do a [Work Experience Program] assignment" since "the benefits he is getting from DSS is [sic] more lucrative than the benefits of getting and trying to keep a job." T.435 (cited at T.19). In July 2011, Plaintiff said that he did not obtain disability benefits, he would get a job. T.19 (citing Ex. 7F

-12-

at 7). In May 2012, Plaintiff stated that he would not look for a job until he actually needed to get one. Id. (citing Ex. 17F at 30). In short, the record reflects not an inability to work on Plaintiff's part, but rather an unwillingness to do so.

As a final point, Plaintiff's argument that the ALJ did not specify the level of "pulmonary irritants" he must avoid is without merit. The ALJ stated that Plaintiff "must avoid concentrated exposure" to pulmonary irritants. Plaintiff has cited no authority for the proposition that this statement is not sufficiently specific. In any event, if there were error, it is harmless because the need to avoid "concentrated" exposure to respiratory irritants has only a minimal impact on his ability to perform the range of light work given in the ALJ's RFC determination. See SSR 85-15, 1985 WL 56857, at *8 ("Where a person has a medical restriction to avoid _excessive_ amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc.") (emphasis supplied). "Further, any assertion that the need to avoid respiratory irritants significantly impacts [P]laintiff's ability to work is undermined by [his] continued cigarette use." Rafferty v. Colvin, No. 3:12-CV-1554(DNH), 2014 WL 1875339, at *11 (N.D.N.Y. May 9, 2014).

C.    **Erroneous Credibility Determination**

Plaintiff argues that the ALJ failed to apply the appropriate legal standard when he found that Plaintiff's allegations were "not entirely credible." T.15. In particular, Plaintiff asserts, the ALJ improperly considered his daily activities as detracting from his complaints of disabling limitations, and erroneously took testimony from the VE before hearing Plaintiff's testimony regarding his limitations.

As the Commissioner argues, the ALJ was not required to accept, without question, Plaintiff's subjective complaints. Rather, "[i]t is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Aponte v. Secretary, Dept. of Health and Human Servs. of U.S., 728 F.2d 588, 591 (2d Cir. 1984) (quotation omitted). If the Commissioner's findings are supported by substantial evidence, the reviewing court "must uphold the ALJ's decision to discount a claimant's subjective complaints. . . ." Id. (internal and other citations omitted). The ALJ is entitled to consider "the claimant's demeanor, and other indicia of credibility" in determining the weight to give subjective complaints. Pasciarello v. Heckler, 621 F. Supp. 1032, 1036 (S.D.N.Y. 1985) (cited in Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir. 1999)).

-14-

Although Plaintiff characterizes his activities of daily living as "minimal", the ALJ reasonably found that Plaintiff engaged in more than a bare minimum of activities on a daily or regular basis, as discussed above. See T.19, 67, 71, 203-07, 443. Plaintiff's own statements to the effect that he did not want to work but would get a job if his benefits applications were denied, further undermine the credibility of his complaints of disabling impairments. Even if there were substantial evidence to support Plaintiff's view of the record, that would not require reversal, because there is clearly substantial record support for the ALJ's determination that Plaintiff is "not entirely credible." See Brault v. Social Sec. Admin., Com'r, 683 F.3d 443, 448 (2d Cir. 2012) ("The substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'") (quotation and citation omitted).

Plaintiff's challenge to the format of the hearing is without merit. There is no indication that the ALJ prejudged Plaintiff's claims simply based on the fact that the ALJ heard testimony from the VE prior to Plaintiff testifying at the hearing. As the Commissioner argues, it is clear that the ALJ had reviewed the medical record and had narrowed the range of likely RFC determinations, but had not made up his mind prior to hearing Plaintiff testify. Rather, the ALJ presented four different hypotheticals to the VE, and Plaintiff's attorney presented three

additional hypotheticals for the VE's consideration. <u>See</u> T.37-51.
If the ALJ had predetermined the outcome, he would not have needed
to spend time listening to the VE testify regarding multiple
hypotheticals.

**D.   Step Five Determination**

**Unsupported by Substantial Evidence**

Plaintiff contends that due to errors in the RFC
determination, the VE's testimony cannot provide substantial
evidence to support the ALJ's finding that Plaintiff is not
disabled. Plaintiff's claim of error at step five depends upon the
finding of error at earlier steps in the sequential evaluation.
However, as discussed above, the Court has found that the ALJ's RFC
assessment is supported by substantial evidence. At the hearing,
one of the hypothetical individuals that the ALJ presented to the
VE included all of the limitations contained in the ultimate RFC
determination. The VE testified that such an individual could
perform representative jobs, such as that of a bench assembler, and
that such jobs existed in significant numbers in the national
economy. The ALJ relied on the VE's testimony to conclude that
Plaintiff could perform work that existed in significant numbers in
the national economy and therefore is not disabled.

**VI.  Conclusion**

For the foregoing reasons, the Court finds that the
Commissioner's determination was not erroneous as a matter of law

and was supported by substantial evidence. Accordingly, the Commissioner's determination is affirmed. Defendant's Motion for Judgment on the Pleadings is granted, and Plaintiff's Motion for Judgment on the Pleadings is denied. The Clerk of the Court is directed to close this case.

    **SO ORDERED.**

                                        S/Michael A. Telesca

                        _____
                            HON. MICHAEL A. TELESCA
                            United States District Judge

Dated:      August 4, 2015
            Rochester, New York.